FENTON AMBULANCE SERVICE, INC., et al., Plaintiffs-Respondents,

v.

Robert RITCHIE, et al., Defendants-Appellants.

No. WD 38459.

Missouri Court of Appeals, Western District.

March 17, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1987.

Application to Transfer Denied June 16, 1987.

David B. Rogers, Columbia, for Ritchie, et al.

Phillip J. Hoskins, Columbia, for Curators of the University of Missouri.

Jerry W. Venters, Bartlett, Venters, Pletz & Toppins, Jefferson City, Lem T. Jones, Jr., Jones & Lehr, Kansas City, B. Daniel Simon and H.A. Walther, Brown, Willbrand & Simon, Columbia, for plaintiffs-respondents.

Before TURNAGE, P.J., and SHANGLER and GAITAN, JJ.

TURNAGE, Presiding Judge.

This declaratory judgment action was brought by Fenton Ambulance Service, Inc. and four other corporations constituting a chain of parent and subsidiary corporations reaching from Fenton to the ultimate parent, American Medical International, Inc. Fenton sued the Trustees of Boone Hospital Center and The Curators of the University of Missouri, who are responsible for operation of the two ambulance services competing with Fenton in the Columbia, Missouri market. Fenton also named various governmental officials and agencies, alleging that they are empowered to enforce the Missouri Ambulance Licensing Law, § 190.100 et seq., RSMo 1986. Fenton seeks a determination that it was not required under § 190.100 et seq. to obtain a new ambulance license upon transfer of ownership of Fenton's corporate stock or upon opening a new base of operations for Fenton's ambulance service in Columbia.

The trial court entered judgment for Fenton, and the Trustees of Boone Hospital Center and The Curators of the University of Missouri have appealed.

Reversed and remanded.

Fenton Ambulance Service, Inc. is the present owner of an ambulance business previously owned and operated by P.O. Fenton and his family. At the time the Missouri Ambulance Licensing Law became effective in 1974 the Fentons had only one ambulance vehicle, which they operated from their funeral chapel in Centralia, Missouri. In 1980 or thereafter the Fentons transferred ownership of their ambulance to their corporation, Fenton Ambulance Service, Inc. In 1983, the Fentons sold their Fenton Ambulance Service stock to a subsidiary of American Medical International, Inc., (though which of the subsidiaries was involved originally is not clear from the record).

After the sale of the stock, Fenton Ambulance Service expanded its operations, hiring additional personnel, upgrading the type of service offered, adding a new base of operations in Columbia, Missouri, and (most important) adding new vehicles to its fleet of ambulances. Because Fenton had been in business with one ambulance when the licensing law became effective in 1974, the Bureau of Emergency Medical Services has taken the position that Fenton is enti-

tled to operate any number of ambulances under "grandfather rights," without any public convenience and necessity hearing under § 190.125.

Boone Hospital filed a complaint with the Administrative Hearing Commission to initiate a public convenience and necessity hearing, due to the change in ownership of Fenton Ambulance Service, Inc. stock and Fenton's addition of the Columbia base of operations. Fenton filed the instant suit for a declaratory judgment that no such hearing was required.

After the trial in this case, the parties stipulated that Fenton Ambulance Service was not incorporated until 1980, and that the ambulance service had been operated by the Fenton family previously; accordingly, the pleadings will be considered amended to include the issue of whether the transfer of the Fenton family's ambulance to Fenton Ambulance Service, Inc. made a public convenience and necessity hearing necessary because it constituted a change of ownership of the ambulance under § 190.115.2. *See* Rule 55.33(b).

■ Upon review of the record, this court finds that a public convenience and necessity hearing is indeed required, although not for the reasons urged by the Boone Hospital Trustees or the Board of Curators. The evidence at trial was that Fenton Ambulance had increased its number of ambulances from one in 1974 to some greater number at the time of trial,[1] but that no public convenience and necessi-

ty hearing was held before licensing these additional vehicles. This court holds that under § 190.100 et seq., a public convenience and necessity hearing is required whenever there is an increase in the number of ambulances to be licensed, whether the existing ambulance licenses were grandfathered or obtained subsequent to the passage of the licensing law.

The relevant sections of the ambulance licensing law envisage a scheme of ambulance regulation based on licensing of particular ambulance vehicles, rather than an umbrella licensing of an entire ambulance business.

Section 190.100(1) defines "ambulance" as a vehicle, rather than as a business.[2]

■ Section 190.105.1[3] prohibits any person from operating an ambulance service business without "a currently valid license for an ambulance." Though, read literally, the statute suggests that an operator may operate a multi-ambulance business so long as at least one of his ambulances is licensed, the clear intent of the licensing law in its entirety is to provide comprehensive regulation for all ambulances operating under non-catastrophic conditions from a Missouri base of operations. Therefore, this court will effectuate the apparent legislative intent by interpreting the statute to require one license for each ambulance.

Section 190.125.2[4] provides that the ambulance license shall be issued for "a speci-

---

1. The company was said to have added "several vehicles" to its fleet.

2. § 190.100

   (1) "Ambulance", any privately or publicly owned motor vehicle that is specially designed or constructed and equipped and is intended to be used for and is maintained or operated for the transportation of patients, including dual-purpose police patrol cars and funeral coaches or hearses which otherwise comply with the provisions of sections 190.100 to 190.195, but the term does not include any motor vehicle specially designed, constructed or converted for the transportation of persons permanently disabled and normally using a wheel chair, or handicapped persons not acutely ill, or emergency vehicles at airports ...

3. § 190.105.1

No person, either as owner, agent or otherwise, shall furnish, operate, conduct, maintain, advertise, or otherwise be engaged in or profess to be engaged in the business or service of the transportation of patients upon the streets, alleys, or any public way or place of the state of Missouri unless he holds a currently valid license for an ambulance issued pursuant to the provisions of sections 190.100 to 190.195.

4. § 190.125.2

The license officer shall issue a license hereunder for a specified ambulance, to be valid for a period of one year, unless suspended, revoked or terminated, when he finds, upon proper notice and hearing:

   (1) That the public convenience and necessity require the proposed ambulance service;

   (2) That each ambulance, its required equipment and the premises designated in the appli-

fied ambulance," rather than for an entire business.

Once it is established that the licensing law contemplates the licensing of particular ambulances, rather than ambulance businesses, it becomes clear that the "grandfather rights" conferred by *State ex rel. Safety Ambulance Service, Inc. v. Kinder,* 557 S.W.2d 242 (Mo. banc 1977), apply to *ambulances* in service in 1974, not *ambulance businesses* in operation at that time.

■ The *Kinder* holding thus governs interpretation of the licensing law in two key respects. First, when an ambulance is relicensed annually or when a substitute ambulance is obtained to replace an ambulance already in service, no public convenience and necessity hearing is required, because (as the court reasoned in *Kinder*) if an operator is legally deploying an ambulance in a given area, "the fact of need is self-evident" and the purpose of the convenience and necessity hearing has already been satisfied. 557 S.W.2d at 245–46. Thus, though the statute requires "conformance with all the requirements of sections § 190.100 to .195 [5] as upon original licensing" each time a license is renewed, § 190.160, or transferred, § 190.115.3, or when ownership of an ambulance changes, § 190.115.2, this statutory language does not mandate compliance with the hearing requirement of § 190.125.2, *if* the need for the services of the ambulance has already been established. This need may be established either through operation of an ambulance prior to the licensing law's effective date or through a public convenience and necessity hearing. (The other four requirements of § 190.125.2 apparently must be satisfied in every case.)

Second, and conversely, when an operator seeks an additional, non-grandfathered license, he must comply with the statutory method of establishing that a need exists for the additional service—i.e., there must be a public convenience and necessity hearing.

This reading of the statute efficiently serves the statutory goal of regulating the competition among ambulance services, as this case illustrates. If Fenton were allowed to transform itself from a one-vehicle ambulance service into a multi-vehicle operation and to sidestep the administrative process by virtue of its "grandfather rights," the competitive conditions among the providers of ambulance services in Columbia could be altered as dramatically as by the appearance of a completely new provider. But unlike a new provider, Fenton could avoid inquiry into whether the public convenience and necessity would be served by its new services. To read the statute to allow existing operators to expand without regulation would not only frustrate the purpose of the statute, but grant existing operators an unfair monopoly by allowing them to expand preemptively, thereby insuring that no new operators could ever establish the requisite need for new ambulance businesses. Thus, sound public policy would seem to support this court's reading of the language of the statute and of *Kinder*—that grandfather rights attach only to licenses for "an ambulance," and not to an entire ambulance business.

In sum, under § 190.125.2 there must be public convenience and necessity hearings for each additional (not substitute) ambulance which Fenton has added to its fleet since 1974.

■ There remains the question of whether a hearing shall be held for the one ambulance whose license has been grandfathered. This court concludes no such hearing is necessary. First, no hearing was

---

cation, have been certified by the health officer as provided herein;

(3) That the applicant is a responsible person who bears a good reputation for honesty, integrity, fair dealing, and is competent to operate an ambulance service;

(4) That the ambulance will be operated only by duly licensed attendants, attendant-drivers, and certified apprentices;

(5) That all the requirements of section 190.-100 to 190.195 and all other applicable laws and ordinances have been met.

5. Section 190.195 was repealed by L.1986, H.B. No. 860 § A.

made necessary by the Fentons' transfer of their stock to American Medical International. No "ambulance", as defined in § 190.100(1), changed hands in the transaction. Section 190.115.2, which defendants rely on, does not apply to changes in ownership of a corporation owning an ambulance, but only to changes in ownership of the ambulance itself.

Second, no hearing was made necessary by the transfer of the ambulance from the Fenton family to Fenton Ambulance Service, Inc., since the public's need for the ambulance is not affected by the change in ownership. Though under § 190.115.2 any change in ownership requires "conformance with ... 190.100 to 190.195 as upon original licensing," it was established in *Kinder* that this provision does not require a public convenience and necessity hearing if the ambulance has already been legally servicing the area in question. Under the *Kinder* reasoning, if the ambulance is legally servicing the area, it is self-evident that the public convenience and necessity require the ambulance's services. The licensing consideration most directly affected by a change in ownership is not whether the public still needs the ambulance, but whether "the [new owner] is a responsible person who bears a good reputation for honesty," etc., § 190.125.2(3); this concern is properly addressed by having the license officer examine the new owner's character under § 190.125.2(3), rather than by holding a convenience and necessity hearing.

Third, in this case the opening of the new base of operations in Columbia is not a reason for requiring a hearing, since the trial court found on substantial evidence that "Columbia and the surrounding area" were within the "historical ... service area" the Fenton operation had been serving since before the licensing law went into effect. Review of the trial court's determination is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and there is no adequate reason in this case to disturb the trial court's determination.

This cause is reversed and remanded with instructions to the trial court to enter its judgment declaring that no public con-

venience and necessity hearing is required for the one grandfathered ambulance. However, such hearings are required before licensing the additional, non-grandfathered ambulances Fenton operates.

All concur.